# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ASHELY, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHERIFF DONNY YOUNGBLOOD, et al.,<br><br>Defendants. | Case No.: 1:16-cv-01638 - JLT<br><br>AMENDED ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>(Doc. 32) |

Mark Ashely asserts Defendants—including Sheriff Donny Youngblood; County Supervisors Mick Gleason, Zack Scrivner, Mike Maggard, David Couch, and Leticia Perez; Jordan Kauffman[1], Treasurer for the County of Kern; Mary Bedard, Auditor Controller; and the County of Kern— are liable for violations of the Fair Labor Standards Act. (Doc. 1) Defendants seek judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, asserting the factual allegations fail to establish the individuals were employers of Plaintiff or state a claim for a violation of the Fair Labor Standards Act. (Doc. 32) Plaintiff opposes the motion, arguing the factual allegations, assumed as true, are sufficient to support his claim. (Doc. 35)

Because the facts alleged in the complaint are insufficient to support Plaintiff's claim for violations of the Fair Labor Standards Act, the motion for judgment on the pleadings is **GRANTED** in

---
[1] At the hearing, plaintiff's counsel reported that naming Jordan Kaufman in the caption was an error and requested the Court delete him from the caption. The Court **GRANTS** the request and the matter is **DISMISSED** against Jordan Kaufman.

1

part and the complaint is **DISMISSED** with leave to amend.

## I. Procedural History

Plaintiff initiated this action by filing a complaint on October 26, 2017. (Doc. 1) He alleges that he "was employed by the County of Kern ('County'), holding the position of Detention Deputy." (*Id.* at 2, ¶ 3) Plaintiff asserted that he is bringing this action for violations of the Fair Labor Standards Act "on behalf of himself and all other similarly situated Detention Deputy's [sic]." (*Id.*) The County of Kern filed its answer to the Complaint on November 21, 2016. (Doc. 5) The individual defendants filed their answers on December 1, 2016. (Docs. 15-17)

On April 14, 2017, Defendants filed the motion for judgment on the pleadings now pending before the Court. (Doc. 32) Plaintiff filed his opposition on June 6, 2017 (Doc. 35), to which the defendants filed a reply on June 12, 2017 (Doc. 37).

## II. Legal Standards

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion pursuant to Rule 12(c) is "functionally identical" to a motion under Rule 12(b). *Dworkin v. Hustler Magazine, Inc.*, 867 F. 2d 1188, 1192 (9th Cir. 1989). Consequently, when considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the [pleadings] as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

To prevail on a Rule 12(c) motion, the moving party bears the burden to demonstrate that (1) "no material issue of fact remains to be resolved" and (2) "he is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984). Judgment on the pleadings is improper if the Court is required to go "beyond the pleadings to resolve an issue." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Rather, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Hal Roach Studios*, 896 F.2d at 1150.

The Court retains the discretion to grant a Rule 12(c) motion with leave to amend, or to grant dismissal rather than enter judgment. *See Pacific W. Grp. v. Real Time Solutions*, 321 Fed. Appx. 566,

569 (9th Cir. 2008); *see also Lonberg v. City of Riverside*, 300 F.Supp.2d 942, 945 (C.D. Cal. 2004) ("although Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of entry of judgment"). Similarly, "[a]lthough Rule 12(c) does not expressly authorize 'partial' judgments, neither does it bar them, and it is common practice to apply Rule 12(c) to individual causes of action." *Carmen v. San Francisco Unified School Dist.*, 982 F.Supp. 1396, 1401 (N.D. Cal. 1997)).

### III.     Factual Allegations

Plaintiff asserts he "was employed as a peace officer," in the position of Detention Deputy. (Doc. 1 at 2, ¶ 3) According to Plaintiff, "peace officers holding the title Detention Deputy Sheriff are not paid for their actual hours worked," in violation of the Fair Labor Standards Act ("FLSA"). (*Id.* at 4, ¶ 13)

Plaintiff alleges Sheriff Youngblood "was one of the elected officials responsible to insure the proper payment of wages to the plaintiff and all others similarly situated and employed by his office." (Doc. 1 at 2, ¶ 4) Likewise, Plaintiff asserts members of the County Board of Supervisors—including Mick Gleason, Zack Scrivner, Mike Maggard, David Couch, and Leticia Perez—were each "one of the elected officials responsible to insure the proper payment of wages to the plaintiff and all others similarly situated and employed by the County of Kern at the discretion of the elected Sheriff." (*Id.* at 2-3, ¶¶ 5-9) Further, Plaintiff contends Mary Bedard, Auditor Controller for the County, is also "responsible to ensure the proper payment of wages." (*Id.* at 3, ¶ 10) However, Plaintiff asserts each of these individuals has failed to comply with the FLSA through failing to pay wages owed to the Detention Deputy Sheriffs. (*See id.* at 4-6)

Plaintiff alleges specific examples of the defendants' failures to comply with the FLSA include: (1) failure to pay pages "during the continuous day," for activities such as "time spent preparing for Court, travel between differing work sites, writing reports and numerous miscellaneous tasks asked of them;" (2) failing to calculate the proper rate of pay; (3) not paying wages for time spent doffing contaminated uniforms; (4) improper use of Compensatory Time Off; and (5) threatening discipline for use of Compensatory Time Off that is authorized by 28 U.S.C. § 207(o). (*Id.* at 4-6, ¶ 15) Therefore, he asserts the "[p]laintiffs are entitled to liquidated damages in the amount twice that of the amount

3

unlawfully withheld for the period of three years last past." (*Id.* at 6, ¶ 16)

## IV. Discussion and Analysis

The FLSA requires that employers pay employees a minimum hourly wage. 29 U.S.C. §§201-219. The fundamental purpose of the FLSA is "the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Id.* at § 202. Here, the defendants contend Plaintiff's claim for FLSA violations fails because the facts alleged are insufficient to establish that the individual defendants were employers and the plead facts do not support the alleged violations. (*See* Doc. 32 at 5-11)

### A. The "Continuous Day" Theory

Plaintiff contends an example of a failure to comply with the FLSA includes "failing to calculate wages from the time of the first employment activity that the plaintiffs commence their work for the day with and continuing up to the time the plaintiffs cease performing duties for the defendants as required by law." (Doc. 1 at 4, ¶ 15(A)) According to Plaintiff, "This includes not paying, during the continuous day, time spent preparing for Court, travel between differing work sites, writing reports and numerous miscellaneous tasks asked of them but not otherwise recorded by the defendant." (*Id.* at 5) However, as Defendants argue, Plaintiff fails to allege that *he* was not paid for actions taken "during the continuous day," that *he* was required to travel to different work locations, go to court, or write reports without compensation or, if this occurred, when this occurred. Consequently, Plaintiff fails to allege facts supporting the conclusion that he performed compensable work for which he was not paid. If he will continue to assert this claim, Plaintiff must provide factual detail as to when this occurred and what occurred. It is insufficient to allege generalities and conclusions as to the putative collection as a whole.

### B. Calculation of the Proper Rate of Pay

In the complaint, Plaintiff contends the defendants failed "to properly calculate the proper base rate of pay for straight time hourly wages as well as FLSA overtime at 150% of the hourly base rate." (Doc. 1 at , ¶ 5(B)) Under the FLSA, plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action. *See Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (9th Cir. 2014) citing 29 U.S.C. § 255(a). When a violation is "willful," however, the

statute of limitations extends to three years.[2] *Id.*

Significantly, here, Plaintiff fails to allege when the proper rate of pay or overtime wages were withheld, such that the Court may determine which statute of limitations applies to the claim. Moreover, as Defendants observe, Plaintiff fails to allege facts supporting the conclusion that he, personally, was paid an improper rate or did not receive overtime wages in compliance with the FLSA. (*See* Doc. 32 at 6; *see also* Doc. 1 at 4-5) Indeed, the complaint fails to explain why the rate paid, in Plaintiff's view was not correct. Once again, if Plaintiff chooses to pursue this claim, he must set forth detail as to what happened and when it happened. Simply announcing it happened is a legal conclusion, not a factual allegation. Because Plaintiff offers only the legal conclusion that the defendants did not calculate proper wages, the claim fails.

**C.     Compensatory Time Off**

Pursuant to the FLSA, an employer that is "a political subdivision of a State" may pay its employees "in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required." 29 U.S.C. § 207(o)(1). Compensatory time off may be paid only pursuant to an agreement, either pursuant to:

> (i)  applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or
>
> (ii)  in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work…

*Id.*, § 207(o)(2)(A).

Plaintiff alleges, "The defendants have not and continue to refuse to negotiate any agreement with regard to the payment for hours worked other than cash and yet continue to demand the right to avoid the payment of cash wages despite the failure of the defendants to achieve any contractual agreement allowing the use of CTO in lieu of cash payments." (Doc. 1 at 5, ¶ 15(D)) According to

---

[2] To show willfulness, a plaintiff must demonstrate that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). An employer who knows of a risk that its conduct is contrary to law, yet disregards that risk, acts willfully. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003).

5

Plaintiff, the defendants "have done so illegally in excess of the past three years."[3] (*Id.*) In addition, Plaintiff contends detention deputy sheriffs are improperly compensated with compensatory time off, asserting "the defendants use this payment method to avoid the payment of cash wages." (*Id.* at 5-6, ¶ 15(E))

Again, however, Plaintiff fails to allege facts sufficient to a determination that he suffered any injury. For example, as Defendants assert, "Plaintiff has not alleged any facts that he has actually accumulated CTO, that the County has not been allowed him to use CTO time, that he does not have a methodology for using CTO, or that he has been threatened with discipline in connection with the use of CTO." (Doc. 32 at 7) Consequently, the facts alleged fail to support Plaintiff's claim for the improper use of compensatory time off.

### D. Doffing of Uniforms

Plaintiff alleges, "Detention Deputy Sheriffs routinely come into contact with new arrestees, inmates, drug addicts and others who are detained by the Courts, many of whom have communicable diseases and infections that result in the contamination of their uniforms." (Doc. 1 at 5, ¶ 15(C)) According to Plaintiff, "[t]his is a daily occurrence." (*Id.*) He asserts:

> Wearing their issued uniforms, mandated by the Sheriff to be worn at work, to their homes, public places or anywhere that those uniforms presents health concerns. These unlawful exposures that threaten employee health and welfare, and cause risk of infection or transmittal of diseases will trigger OSHA and other regulatory agency investigations.

(*Id.*) Plaintiff asserts the removal of contaminated uniforms is not permitted "until after the workday," and as a result the deputies are "not paid to doff their contaminated gear at the end of a shift." (*Id.*) Plaintiff contends this failure to pay for doffing of uniforms is a violation of the FLSA. (*Id.*) On the other hand, Defendants contend the claim fails both as a matter of pleadings and as a matter of law.

---

[3] At the hearing, counsel for the plaintiff claimed that there had been no contract in place for three years. This is contrary to news reports indicating that there *were* contracts issued during this period and more recent news reports that the union representing the deputies entered into a contract with the County of Kern earlier this month. The Court does not take these news accounts as fact but merely notes that Plaintiff or his counsel *may* be misinformed and to remind them of their obligations under Rule 11 to properly investigate the truth of their assertions before making them and, of course, to always and only speak the truth to the Court.
 For example, counsel telling the Court that the County's "charter" or its "Ordinance Code" empowered the Board of Supervisors to take budgetary control over the Sheriff's Office was clearly untrue in light of the fact that the County of Kern is not a charter county and counsel had never looked at the County's ordinances.

6

(Doc. 32 at 7, citing *Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010))

### 1. Factual sufficiency of the allegations

As an initial matter, as Defendants observe, Plaintiff fails to allege that *he* was exposed to contaminants while employed as a detention deputy sheriff, or that he was required to doff his uniform at the end of a shift, prior to leaving, without compensation. Consequently, the facts alleged are insufficient to support his claim.

### 2. Whether doffing of uniforms by officers is compensable "work"

Under the FLSA, employers must pay employees for all hours worked. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003), *aff'd* 546 U.S. 21 (2005); *see also* 29 U.S.C. §§ 206, 207. Although the statute does not define the term "work," the Supreme Court determined "work" includes "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (superseded by the Portal-to-Portal Act, 29 U.S.C. § 251 (2006)). However, "that such activity is work as a threshold matter does not mean without more that the activity is necessarily compensable." *Alvarez*, 339 F.3d at 902.

In addition, activities that "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases," may also be compensable. *Steiner v. Mitchell*, 350 U.S. 247, n.2 (1956). Such "preliminary and postliminary activities" may be compensable where they are "an integral and indispensable part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247 (1956). Thus, to determine whether a preliminary or postliminary activity was compensable within the definition of the FLSA, the Ninth Circuit established a three-step inquiry, which requires the Court to determine: (1) "whether the activity constituted 'work;'" (2) "whether the activity was an 'integral and indispensable' duty;" and (3) "whether the activity was *de minimis*." *Bamonte*, 598 F.3d at 1224.

For example, in *Bamonte*, the Ninth Circuit reviewed a claim concerning the donning and doffing of the uniforms and gear by police officers. *See id.* at 598 F.3d at 1225. The Court noted:

> In support of their argument that the time spent donning and doffing the uniform and related gear was compensable, the police officers emphasized the relationship between their uniform and gear and the performance of their duties. Specifically, the officers relayed their belief that the uniforms and gear contribute to their command

> presence, thereby promoting officer and public safety in furtherance of law enforcement goals.
> The officers also explained that it was preferable to don and doff their uniforms and gear at the police station. The explanation included the following considerations: (1) the risk of loss or theft of uniforms and gear at home; (2) potential access to the gear by family members or guests; (3) distractions at home that might interfere with the donning process; (4) safety concerns with performing firearm checks at home; (5) discomfort associated with wearing the gear while commuting; (6) the increased risk of being identified as a police officer while off-duty; and (7) potential exposure of family members to contaminants and bodily fluids.

*Id.* at 1220. The Court noted that there was "no rule, regulation, policy, or practice" requiring the police officers to don or doff their uniforms at home. *Id.* at 1231. While there were "logical reasons … such as comfort, safety concerns, and exposure of family reasons to certain substances" for the officers to doff their uniforms and gear prior to going home, the Court determined "these reasons reflect *preferences* rather than mandates." *Id.* (emphasis added)

As Defendants observe, Plaintiff's allegations are similar to those presented in *Bamonte*. (Doc. 32 at 8) Plaintiff contends coming into contact with "new arrestees, inmates, drug addicts and others who are detained by the Courts" is a routine and "daily" occurrence for deputies, and that "*many* of the individuals have communicable diseases and infections that result in the contamination of their uniforms." (Doc. 1 at 5, ¶ 15(C), emphasis added). However, there are no facts to support a conclusion that each encounter results in the contamination of the uniforms. Even still, although Plaintiff asserts contamination "presents health concerns" if the uniforms are worn home or to other public places, the Ninth Circuit determined such a concern reflects only a *preference* to doff the uniform prior to going home. *Bamonte*, 598 F.3d at 1225; *see also Balestrieri v. Menlo Park Fire Prot. Dist.,* 800 F.3d 1094, 1100 (9th Cir. 2015) (explaining that the donning and doffing of work was an activity the officers could choose to perform at home, and a desire to not expose family members to bodily fluids that may be on a uniform was "not enough to make changing at the police station compensable work").

Plaintiff argues that his claim is different from those in *Bamonte* because he is alleging actual, rather than potential, exposure to contaminants. Plaintiff misreads *Bamonte*. The potential exposure *Bamonte* discussed was that risked by the families of the officers and others who would come in contact with the actual contamination on the officers' uniforms. Thus, *Bamonte* specifically

8

recognized that the uniforms were actually contaminated.

On the other hand, Plaintiff argues that this contamination constitutes a violation of OSHA standards. Even if true, this does not contradict *Bamonte's* holding that a doffing claim such as the one brought here is not compensable under the FLSA. Seemingly, Plaintiff is arguing that every day he is required to stay late to undergo a decontamination process due to the contamination of his uniform. Though the Court finds this to be facially implausible, even if he can make this assertion according to the standards of Rule 11[4], at most, this may support a claim for the wrongful failure to pay for the overtime experienced by the particular officers who must undergo the decontamination process. It does not translate into a doffing claim that is prohibited by *Bamonte*.

Because Plaintiff fails to allege any facts that would distinguish the doffing claim from the facts before the Court in *Bamonte*, Defendants' motion for judgment, as to this claim, is **GRANTED**, without leave to amend.

### E. Whether the individual defendants were "employers"

As a threshold matter, to be liable for a violation of the FLSA, a defendant must be an employer of the plaintiff. Here, the defendants argue, "Plaintiff's claim against the individual defendants should be dismissed because Plaintiff does not allege sufficient facts to show they could be deemed employers." (Doc. 32 at 9, emphasis omitted) On the other hand, Plaintiff contends he "plead that the individual Defendants are responsible for the payment of wages and viewed most favorably to the Plaintiff, that [fact] is sufficient."[5]  (Doc. 37 at 12)

The FLSA defines the term "employer" broadly, and includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and . . . anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). This definition of

---

[4] The Court takes extremely seriously the obligations of Rule 11 imposed on the parties and counsel. Plaintiff should take care to make only factual allegations that he has reason to believe are true. For example, suggesting that every officer has undergone a decontamination process at the end of his or her shift merely because the officers changes clothes is insufficient and would give rise to Rule 11 sanctions.
**All counsel and all parties are advised that the failure to comply with Rule 11 will result in the Court imposing the full extent of allowable sanctions.**
[5] Plaintiff misapprehends the standard for a Fed.R.Civ.P. 12(c) motion. The Court does not view the allegations of the complaint "most favorably to the Plaintiff." Rather, the Court must accept as true all factual allegations but disregards all legal conclusions. Asserting that the defendants are responsible to paying wages is a legal conclusion, not a fact.

9

"employment" rejects the common-law definition of employment and applies "to many persons and working relationships which, prior to [the FLSA], were not deemed to fall within an employer-employee category." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947); *see also Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009) ("the definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes").

To determine whether an employer-employee relationship exists for purposes of the FLSA, the Supreme Court determined that a court must look to the "economic reality" of the situation. *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1992). Under this test, the Court considers four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

### 1. Power to hire and fire

There are no facts alleged that Mick Gleason, Zack Scrivner, Mike Maggard, David Couch, Leticia Perez or Mary Bedard had the power to hire and fire Plaintiff or any other detention deputies. Rather, the only allegation indicates that Plaintiff and others similarly situated were "employed by the County of Kern at the discretion of the elected sheriff." (*See* Doc. 1 at 3, ¶10) Therefore, as admitted by the plaintiff, only Sheriff Youngblood was empowered power to hire and fire Plaintiff.[6]

### 2. Supervision and control of work schedules and conditions

As Defendants observe, Plaintiff does not allege that any of the individual defendants supervised Plaintiff or controlled his work schedule. (*See* Doc. 34 at 10) Because Plaintiff fails to allege that Sheriff Youngblood, the Supervisors or the auditor controller supervised his day-to-day activities or controlled when he worked, this factor supports a finding that the individual defendants were not Plaintiff's employers.

On the other hand, as the elected official who is responsible for the Sheriff's Office, it is

---

[6] Notably, Plaintiff does not assert that Sheriff Youngblood was, in fact, the elected sheriff when Plaintiff was hired as a Detention Deputy Sheriff. Indeed, Plaintiff fails to allege *when* he was hired or when his employment was terminated.

plausible that Donny Youngblood was empowered to supervise Plaintiff, to set his work schedule and the conditions of his employment. The fact that Plaintiff has not yet adequately supported this claim with factual allegations, does not mean he is unable to do so.

### 3. Rate and method of payment

Plaintiff alleges that each of the defendants "is one of the elected officials responsible to insure the proper payment of wages to the plaintiff." (Doc. 1 at 2-3, ¶¶4-10) However, Plaintiff fails to allege the individual defendants did, in fact, determine his rate of pay, or the pay of others employed as detention deputy sheriffs. For the same reasons set forth above, however, it appears that Plaintiff may be able to state a claim against Donny Youngblood.

In addition, the argument that the members of the Board of Supervisors failed to provide Sheriff Youngblood an adequate budget does not make them employers under the FLSA. The members of the board of Supervisors are charged with the obligation to allocate the available resources to the various departments. This does not carry with it the authority to dictate to the elected officials as to how to deploy the budget allocated to the elected official's department. If, indeed, the plaintiff is correct that Youngblood had insufficient budget to meet salary demands, then he should have reduced expenditures whether through layoffs or cutting other programs, to meet the salary demands. This does not translate to a duty the members of the Board of Supervisors to provide a greater budget to the Sheriff's Office or make them liable for an FLSA violation if Youngblood failed to comply with the law.

### 4. Maintenance of employment records

According to Plaintiff, "[t]he defendants fail to perform their duties to track and pay for all hours worked as required by the FLSA" and "[i]nstead they mandate the Detention Deputies maintain time records." (Doc. 1 at 4, ¶ 14) However, Plaintiff does not allege that *he* was required to track his time records, or allege that any of the individual defendants maintained his employment records.[7]

### 5. Conclusion

Contrary to Plaintiff's assertion, the lone contention that the defendants are obligated "to insure the proper payment of wages" is not sufficient to support a conclusion that each of the individual

---

[7] The Court is not clear what the plaintiff is alleging in this regard. The Court presumes he is not claiming that it is a violation of the FLSA to require employees to complete a time card because clearly this would not state a claim.

11

defendants was Plaintiff's employer. Rather, the factors set forth by the Ninth Circuit to evaluate the "economic reality" of the relationship weigh in favor of a determination that Donny Youngblood, Mick Gleason, Zack Scrivner, Mike Maggard, David Couch, Leticia Perez and Mary Bedard were not employers within the meaning of the FLSA. Therefore, Defendants' motion for judgment on the pleadings as to the claims against the individual defendants is **GRANTED**.

## V.     Conclusion and Order

Based upon the foregoing, the Court finds the facts alleged are insufficient to support the alleged violations of the FLSA. However, to the extent the Court is unable to determine whether leave to amend would be futile, the Court exercises its discretion to permit Plaintiff leave to amend the complaint. *See Pacific W. Grp.*, 321 Fed. Appx. at 569 (instructing that leave to amend should be granted under Rule 12(c) "*unless* amendment would be futile" [emphasis in original]).

Accordingly, the Court **ORDERS** that the motion for judgment is **GRANTED** in part and **DENIED** in part as follows:

1. The motion for judgment on the claims against Mick Gleason, Zack Scrivner, Mike Maggard, David Couch, Leticia Perez and Mary Bedard is **GRANTED** without leave to amend;
2. The motion for judgment on the claims against Donny Youngblood is **GRANTED** with leave to amend, except as noted below;
3. The motion for judgment on Plaintiff's claim for uncompensated wages based upon the doffing of uniforms is **GRANTED** without leave to amend; and
4. As to all other theories for violations of the FLSA the motion for judgment is **GRANTED** with leave to amend the complaint; and

///
///
///
///
///
///

///

5. If Plaintiff chooses to file an amended complaint, he **SHALL** do so within fourteen days and **SHALL** address the defects identified in this order. Failure to file an amended complaint or to address the defects will result in the Court determining that the plaintiff is unable to state a claim, which will cause the Court to dismiss the action or parts thereof.

IT IS SO ORDERED.

Dated: __**June 21, 2017**__             __**/s/ Jennifer L. Thurston**__
                                                             UNITED STATES MAGISTRATE JUDGE